894 So.2d 398 (2005)
STATE of Louisiana
v.
Leonard McGEE.
No. 04-KA-963.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 2005.
*401 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Thibodaux, LA, for Defendant/Appellant.
*402 Leonard McGee, In Proper Person, St. Gabriel, LA, Pro Se Supplemental Brief.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On January 15, 2004, the Jefferson Parish District Attorney filed a five-count bill of information against defendant, Leonard McGee. In counts 1 through 3, defendant was charged with armed robbery pursuant to LSA-R.S. 14:64. In count 4, defendant was charged with attempted armed robbery pursuant to LSA-R.S. 14:27 and 14:64. In count 5, defendant was charged with purse snatching pursuant to LSA-R.S. 14:65.1. Defendant was arraigned on January 16, 2004, and pled not guilty to all counts.
Defendant filed various pre-trial motions, including motions to suppress statements and evidence. These motions were heard and denied on April 16, 2004. Defendant was tried on all counts by a twelve-member jury on June 15, 16, and 17, 2004. The jury returned verdicts of guilty as charged on all counts.
On June 21, 2004, defendant filed a Motion for New Trial and a Motion for Post Verdict Judgment of Acquittal. The trial court denied both motions without hearing on June 23, 2004. On July 15, 2004, the court sentenced defendant to thirty years at hard labor, without benefit of parole, probation or suspension of sentence, on each of counts 1 through 3. As to counts 4 and 5, the court sentenced defendant to ten years at hard labor. The court further ordered that all sentences run consecutively to each other. Defendant made an oral motion for appeal. The state filed a habitual offender bill of information on July 15, 2004, but dismissed it the same day.
Defendant filed a Motion to Reconsider Sentence on July 16, 2004 and a Motion for Appeal on July 17, 2004. On July 20, 2004, the court denied the Motion to Reconsider Sentence and granted the appeal motion.

FACTS
In count 1, defendant was charged with the armed robbery of Maria Isabel Gill[1]. Gill testified that on October 30, 2003, she lived in an apartment complex on Houma Boulevard in Metairie. She returned home from a grocery store at about 6:30 p.m. and parked her car. She saw defendant, Leonard McGee, walking between two buildings. He looked at her, and then turned away. When Gill opened the trunk of her car and began to unload her groceries, defendant started walking toward her.
Gill opened the door to her vehicle and attempted to get into the driver's seat. Before she could close the door, defendant was next to her, holding a gun to her head. Gill asked defendant what he wanted, and he ordered her to give him her purse. She told him to take it. Defendant took her purse and rummaged through it. He also looked inside her insulated lunch bag, which was empty. Defendant asked Gill whether there was money in her purse. She told him everything was in the purse. Defendant tucked the purse under his arm and walked toward a large, light-colored car. Gill testified that her cellular telephone was among the items in her purse. She never recovered her purse or its contents.
*403 On December 1, 2003, Detective Roger Gorumba of the Jefferson Parish Sheriff's Office showed Gill a photographic lineup and she positively identified defendant as the man who robbed her. She also identified defendant in court.
In count 2, defendant was charged with the armed robbery of Theresa Celino. Celino testified that she and her husband own A Cool AC Supply, a business on Barataria Boulevard in Marrero. On November 12, 2003, she was working alone in her office when defendant entered the building with a young woman. The woman asked Celino for assistance with an item of merchandise. Defendant then asked Celino some questions about ductwork. When Celino turned her back on defendant, he went to her side of the service counter and grabbed her. Pointing a gun at her, defendant walked her to a storeroom. Defendant told his female companion to bring him some duct tape. The woman complied, and she taped Celino to a chair. Defendant then strapped the chair to a desk.
Defendant warned Celino that if she moved, he would shoot her. He then took all the money out of Celino's cash box, and left the premises. Celino testified that a police detective showed her a photographic lineup on November 18, 2003. She identified defendant as the man who had robbed her. Celino also identified defendant in court. The detective showed Celino a photographic lineup consisting of women, but she was not able to positively identify defendant's accomplice.
In count 3, defendant was charged with the armed robbery of Noreen Johnson. Johnson testified that she arrived at Boomtown Casino on Peters Road in Harvey at 2:30 a.m. on November 14, 2003. She parked her car in the casino's parking lot. She was exiting the vehicle when defendant approached her and began to ask her a question. He then knocked her backwards into the vehicle. Defendant put a gun to Johnson's face and threatened to kill her if she did not give him her purse.
Johnson gave defendant her purse, and watched him as he walked across the parking lot. She saw him get into a gray car and drive away. She followed in her vehicle, hoping to gather information for police. She wrote down defendant's license plate number and returned to the casino. She notified police about the incident.
Johnson testified that her cellular telephone was inside of her purse when defendant took it. She alerted her cell phone company to the robbery, and asked to be notified if any calls were made using her phone. She learned of four calls made from her cell phone within an hour of the robbery. Johnson called the telephone numbers that had been called from her missing phone. She reached Sylvia Joseph, who gave her information she later passed on to police.
Detective John Carroll interviewed Johnson, and showed her a photographic lineup. Johnson positively identified defendant as the man who had robbed her. She also identified him in court.
Sylvia Joseph testified that she met defendant at a Marrero nightclub called Pee Wee's Lounge at about 2:30 a.m. on November 14, 2003. She gave defendant her telephone number before leaving the club. At about 3:05 a.m., she received a call from defendant on her home telephone. He left a message on her voice mail system, saying he was calling to make sure she had gotten home safely. Joseph was shown State's Exhibit 11, a copy of Noreen Johnson's cellular telephone bill. She identified one of the telephone numbers listed on the bill as her home number. Joseph testified that she identified defendant in a photographic *404 lineup on November 15, 2003. She also identified defendant in court as the man she met at Pee Wee's Lounge.
Defendant was charged with attempted armed robbery of Denise Wild in count 4. Wild testified that she lives on Mayo Avenue in Harahan. At about 1:30 a.m. on November 15, 2003, she was driving home from her sister-in-law's home in Metairie. On Jefferson Highway, she noticed that a car was following her. She described the car as an old model Oldsmobile, metallic blue or silver in color. The car was occupied by two men.
Wild continued driving to her house, and pulled into the driveway. She saw a car's headlights coming around the corner toward her. She dialed 9-1-1 on her cell phone to call for help. The car parked in the middle of the street, and defendant, the car's driver, approached her pulling a black hood over his head. Defendant was carrying a gun.
Wild backed her vehicle out of her driveway, and defendant got back into his car. He drove three houses down and turned around in a driveway. Wild continued to operate her car in reverse, and the car came at her head-on. The car eventually pulled alongside her vehicle, and the passenger got out and walked toward her vehicle carrying a gun. Wild continued to evade the men. She got in contact with the 9-1-1 operator, who offered her little assistance. The 9-1-1 operator finally dispatched two officers to the area where the men had accosted Wild, but she was safely home by that time.
Wild testified that a Harahan police detective showed her a photographic lineup. She identified defendant as the driver of the car that had followed her.
In count 5, defendant was charged with the purse snatching of Katsuko Cox. Cox testified that she lives on Wright Avenue in Terrytown. At 5:30 a.m. on November 5, 2003, she returned home from Boomtown Casino. She parked her car in her driveway, and walked toward the front door of her residence. A tall black man approached her from behind and began talking to her. She did not understand what he was saying, so she continued to walk to the door. The man tackled her, knocking her to the ground. He took her purse, which she was wearing on her shoulder. Cox saw the man leave in a car parked in front of her neighbor's house. Detective Dax Russo later showed Cox a photographic lineup. She was not able to make a positive identification.
Cox testified that her cell phone was among the items in her purse when it was stolen. She never recovered her telephone. She identified State's Exhibit 2 as a record of calls made from her cell phone after it was stolen. She testified that she did not make those calls.
Detective Carroll testified that he participated in defendant's arrest on November 17, 2003. Detective Carroll learned defendant's address through computer checks. He went to defendant's residence in Bridge City, and found defendant outside, leaning on a gray Oldsmobile. Detective Carroll identified the car through Noreen Johnson's description and the license plate number she gave him.
Detective Carroll advised defendant of his rights, and conducted a pat-down search of his outer clothing. The officer recovered a key ring which held the keys to defendant's car and house. Detective Carroll noted that defendant's car did not have the proper license plate on it. The plate on the car was registered to a Toyota. He later located the Toyota, and found that it had the license plate that was registered to the gray Oldsmobile.
Detective Carroll obtained defendant's written consent to search his house. Detective *405 Carroll recovered a denim jacket and blue jean pants from defendant's bedroom.
Detective Carroll once again advised defendant of his rights at the detective bureau. Defendant said he had borrowed the Oldsmobile, and that he had been in possession of the car for some time. When the officer questioned him about telephone calls made on the victims' cell phones, defendant said he had made calls using borrowed cell phones. He did not know whose phones they were, or from whom he had borrowed them.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant alleges that the trial court erred by not granting his motion to suppress his statements and items gathered from a search of his home. Defendant first argues that the evidence seized at his residence should have been suppressed because his consent to the search was not voluntarily given. Defendant further argues that he did not make the statements he was alleged to have made to police, and that he was coerced into signing a waiver of rights form.
The Fourth Amendment to the United States Constitution, and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. A search made without a warrant issued on probable cause is considered unreasonable unless said search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). The consent to search is such an exception, when it is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797, p. 11 (La.7/22/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); State v. Taylor, 04-90, p. 6 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 967, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193.
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. LSA-C.Cr.P. art. 703(D); State v. Enclade, 03-353, pp. 4-5 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13. In this case, the state produced testimony from Detective John Carroll at the hearing on defendant's motion to suppress evidence.
Detective Carroll testified that he arrived at defendant's residence at 929 Hooter Road in Bridge City at 3:55 p.m. on November 17, 2003. He was accompanied by Sergeant Larry Dyess and a uniformed patrol officer. Defendant was standing in the driveway of the residence, leaning against a gray Oldsmobile Cutlass automobile. Detective Carroll checked the vehicle identification number on the car on the police computer system, and found that it was listed as stolen. Detective Carroll testified that he immediately placed defendant under arrest and handcuffed him. He informed defendant of his Miranda rights,[2] and explained to him the charge for which he was being arrested. Detective Carroll testified that he asked defendant for his consent to search the house, and explained to him the reason for the search. Detective Carroll said he did not *406 use force or intimidation, or offer defendant anything in exchange for his consent to search. According to Detective Carroll, defendant agreed to the search, and signed a Jefferson Parish Sheriff's Office Consent to Search Form. A copy of the form was introduced as State's Exhibit 1 at the hearing. Detective Carroll said he reviewed the form with defendant before asking him to sign it. Detective Carroll participated in a search of defendant's residence, and recovered a denim jacket and a pair of blue jeans. Those items were eventually admitted as evidence at trial.
Based only on Detective Carroll's testimony, the judge denied defendant's motion to suppress the evidence. Defense counsel then asked the judge to reopen the motion to hear defendant's testimony. The judge agreed to do so.
Defendant then testified that the officers acted in an aggressive manner when they arrived at his home. When he asked why they were there, they told him, "`Well, you're going to find out later when you get to the Detective Bureau.'" Defendant testified he was not informed of the charges against him until later, when he was at the detective bureau. He said the handcuffs the officers put on him were extremely tight. Defendant further testified that Detective Carroll and Sergeant Dyess told him that if he wanted the pressure off he would have to do what they told him to do.
Defendant testified that he signed the Consent to Search Form, but that the form was blank when he signed it. He observed that it had been altered after he signed it. Defendant testified that his mother, who owns the house, approached the officers and asked them what was happening. The officers told her to go back to work. Defendant said he was not given a copy of the consent form, and that he was not at the house when the search took place.
The trial court found that the defendant voluntarily consented to the search. The trial court apparently found Detective Carroll's testimony to be credible and discounted the defendant's testimony. The credibility of witnesses at a suppression hearing is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Such credibility determinations will not be reweighed on appeal. State v. Enclade, 03-353 at p. 5, 858 So.2d at 13. Based on Detective Carroll's testimony, which the trial court obviously found to be credible, the search was based on the valid written consent of the defendant. We agree with the trial court and find that defendant's consent was voluntarily given and the search was valid.
Defendant next complains that the trial court improperly admitted statements he purportedly made to officers following his arrest. Detective Dax Russo testified at trial that in response to questions concerning numbers called from Ms. Cox's stolen cell phone, defendant told him he had borrowed a silver flip phone from someone on the street. Detective Carroll testified at trial that defendant stated he had made calls using borrowed cell phones and he did not know whose phones they were or from whom he had borrowed them.
Defendant argues that he testified to police misconduct in connection with his statements, and the state failed to specifically rebut those allegations. In support of his argument, defendant cites State v. Serrato, 424 So.2d 214, 222, (La.1982), in which the Louisiana Supreme Court held:
Once a defendant asserts that his confession was obtained in such a manner, the state must rebut the defendant's allegations to carry its burden of proving the voluntariness of the confession. *407 The state cannot rely merely on general disclaimers of inducements or promises; rather, it must rebut specifically each of defendant's allegations.
At a hearing on the motion to suppress a statement or confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. LSA-C.Cr.P. art. 703(D); State v. Hills, 354 So.2d 186, 188 (La.1977); State v. Terrick, 03-515, p. 9 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1159, writ denied, 03-3272 (La.3/26/04), 871 So.2d 346. Before a prosecutor may introduce the statement or confession into evidence, it must be shown that the statement or confession did not result from fear, duress, intimidation, menace, threats, inducements or promises. LSA-R.S. 15:451; State v. Lucky, 96-1687, p. 16 (La.4/13/99), 755 So.2d 845, 855, cert. denied, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000); State v. McLelland, 03-498, pp. 5-6 (La.App. 5 Cir. 10/15/03), 860 So.2d 31, 35, writ denied, 03-3372 (La.3/26/04), 871 So.2d 347. A statement obtained by direct or implied promises, or by the exertion of improper influence must be considered involuntary, and thus, inadmissible. State v. Jackson, 381 So.2d 485, 487 (La.1980); State v. McLelland, supra. If the accused is in custody at the time he makes the statement, he must have been advised of his constitutional rights. Miranda v. Arizona, supra. The determination of whether a waiver of constitutional rights is knowing and voluntary is made on a case-by-case basis, and such determination rests upon the "totality of the circumstances." State v. Fernandez, 96-2719, p. 7 (La.4/4/98), 712 So.2d 485, 487; State v. Terrick, 03-515 at p. 10, 857 So.2d at 1159.
At the hearing on the defendant's motion to suppress statements, the state presented testimony from Detective Dyess. The officer said that he met with defendant at the detective bureau at 4:40 p.m. on November 17, 2003. He advised defendant of his Miranda rights using a Jefferson Parish Sheriff's Office Rights of Arrestee or Suspects form. The form showed that defendant was under arrest for armed robbery, and listed his constitutional rights, including the right to remain silent and the right to talk with a lawyer.
Detective Dyess testified that he went over each of these rights individually with defendant, and allowed defendant to follow along using the form. Detective Dyess said defendant appeared to understand his rights. As defendant said he understood each right, Detective Dyess had him place his initials next to that right on the form. When Detective Dyess completed the advisal, he asked defendant to sign the bottom of the form, indicating he understood his rights.
Detective Dyess testified that he interviewed defendant for thirty to forty-five minutes. At no time did defendant say he wanted to stop, nor did he ask for an attorney. Detective Dyess testified that no one used force, coercion, or intimidation to persuade defendant to waive his rights and make a statement and nothing was promised to defendant.
Defendant testified at the motion hearing that it was Detective Carroll, not Detective Dyess, who showed him the rights form. He said Detectives Carroll and Dyess forced him to sign the waiver of rights form by pushing him around and choking him. Defendant told Detective Carroll he did not want to sign the form, and Detective Carroll told him he was going to jail. Defendant also testified that Detective Carroll refused to tell him what crime he was charged with until he signed the form. Defendant said he signed the form in order to learn the offense for which he had been arrested. He *408 stated that there were five detectives asking him questions, but he did not say anything to them.
Defendant's claim in the trial court, that he did not make any statements, does not correspond with his claim on appeal that the officers coerced a statement. In any case, it appears that the prosecutor sufficiently addressed defendant's allegations of police misconduct. As discussed above, the court simply found the officer to be a more credible witness than defendant. It is not within the purview of this Court to reweigh the credibility of the witnesses. We find that the trial court did not abuse its discretion in denying defendant's motion to suppress statements.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant next argues that the trial court improperly denied a trial continuance where his attorney was unprepared for trial, and the state did not provide some discovery until shortly before the trial began. On that basis, defendant argues he is entitled to a new trial.
Defendant's appointed counsel made an oral motion for continuance on June 15, 2004, the first day of trial. Counsel explained that he received word of his appointment to defendant's case on January 22, 2004. He filed discovery motions on January 23, 2004. The state responded to the discovery motions on February 12, 2004. Counsel said it was not until February 27, 2004, when he attempted to visit defendant at the Jefferson Parish Correctional Center, that he learned defendant was being housed in another parish.
Defense counsel told the court that his first contact with defendant was on April 16, 2004, the day defendant's suppression motions were heard. Defendant was held at the Jefferson Parish Correctional Center through April 19, 2004, and counsel met with him on April 19th to review police reports and exchange information.
Counsel claimed a trial continuance was necessary because there had been a "breakdown in communication" between himself and defendant. He said he had not had an opportunity to discuss witnesses and possible defenses with defendant. Counsel said he had not provided defendant adequate representation under the Sixth Amendment. He hinted that defendant was dissatisfied with his representation, and that defendant expected that the court would grant him different counsel. Counsel argued that defendant did not realize the trial date was coming so soon.
Defense counsel told the court that the prosecutor had responded in a timely manner to his discovery requests. Defendant had asked him for a copy of the state's discovery package, but, due to a problem with his office, counsel had not sent the discovery materials to defendant until June 2, 2004. In addition to a continuance, counsel asked that defendant be moved to Jefferson Parish so that it would be easier for them to meet to prepare for trial.
The prosecutor responded to counsel's arguments by pointing out that he had sent copies of all documents in the state's file to counsel early in the proceedings. The prosecutor further argued that defense counsel had been given the option of having defendant transported to Jefferson Parish prior to the motion hearings, but had opted to meet with him after the hearings. Counsel met with defendant after the motion hearings for two and one-half hours. At that point, counsel was in possession of the discovery materials. The prosecutor further argued that the trial date was set in open court at the time of the motion hearings, and defendant and counsel were both aware of how much *409 preparation time they would have. Finally, the prosecutor argued that defense counsel was an experienced and well prepared attorney, and that he believed defendant's complaints were the impetus for the continuance motion.
Counsel conceded that the prosecutor's response to his discovery motions was satisfactory. He noted that there was some problem with the videotape of the Boomtown Casino robbery, but that it had been resolved. Counsel emphasized that the prosecutor was not the reason behind his lack of preparation; that it was a question of logistics and his own caseload.
When the judge asked the prosecutor about the videotapes to which counsel had referred, he explained that one of the police reports mentioned that a security camera in the Boomtown Casino parking lot had captured the Noreen Johnson robbery. The prosecutor said the defense had not previously requested the tape, and that he had not seen it himself. It had been in the possession of the sheriff's office, and the prosecutor had given it to defense counsel the previous day. The prosecutor assured the judge that the tape did not contain any exculpatory material, and that the state did not intend to use it at trial.
The judge called a recess in the proceedings to allow defendant and his attorney to view the videotapes. Afterwards, defense counsel informed the judge that the quality of the recordings was so bad as to be worthless as evidence. Counsel asked the court to grant a continuance so that he might have an opportunity to have the tapes examined. The prosecutor argued against a continuance, noting that defense counsel had asked for the tapes only one day earlier.
The judge denied defendant's continuance motion without giving reasons. The judge allowed defense counsel to make a proffer of the tapes for purposes of appeal.
On appeal, defendant complains that the trial court erred in denying his motion for continuance because counsel was unprepared for trial, and because late discovery responses from the state contributed to counsel's lack of preparation. Defendant complains that he did not personally receive copies of the state's discovery responses until early June 2004. Counsel had the state's discovery materials long before that, and admitted that defendant received them so late due to a mailing problem at his office.
LSA-C.Cr.P. art. 707 requires that a motion for a continuance be in writing, and be filed at least seven days prior to trial. But in the interest of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing. State v. Williams, 00-1850, p. 4 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 790, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666. The granting of a continuance is discretionary on the part of the trial judge. LSA-C.Cr.P. art. 712; Id. The denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. State v. Bartley, 03-1382, p. 5 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006; Id.
There is no evidence in the record that defense counsel filed a written continuance motion, nor did he make his oral motion seven days in advance of trial. There is an exception to the requirement that a continuance motion be in writing where the circumstances producing the motion occur unexpectedly and the defendant's counsel had no opportunity to prepare the motion. Bartley, 03-1382 at p. 4, 871 So.2d at 567. In this case, there were no unexpected circumstances that would have prevented defense counsel from preparing *410 a motion. However, in the interest of judicial economy, we will address the merits of defendant's claim.
By his own admission, defense counsel had ample opportunity to prepare for trial. He learned of his appointment to defendant's case five months prior to trial. He did not attempt to locate defendant until more than a month after his appointment. When he discovered defendant was not housed in Jefferson Parish, he might have gone to the place where defendant was incarcerated, but he chose not to do so.
In support of his continuance motion, defense counsel also argued that defendant was "forced" to go through motion hearings with an attorney whom he had never met. This was not the fault of the state or the court. It is evident from the record that the court gave counsel an opportunity to request that defendant be moved to the Jefferson Parish Correctional facility prior to the motion hearings. Counsel chose instead to meet with defendant after the motion hearings. Counsel did a competent job of representing defendant at the hearings, and met with defendant for over two hours a few days later to review discovery materials.
Defendant also argues on appeal that he was deprived of the opportunity to use the videotape from Boomtown Casino as exculpatory evidence at trial. LSA-C.Cr.P. art. 718 provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
Defendant filed a pro se discovery motion on January 22, 2004. Counsel filed a discovery motion on January 23, 2004. The state responded to the motions without delay. On January 27, 2004, the state filed a State's Notice to the Record. This included numerous police documents associated with the investigations of the instant offenses. Counsel conceded that the state's discovery response was adequate. Counsel had ample time prior to trial to review the state's response. As to the security tapes, counsel had notice of their existence months before trial. They were mentioned in one of the police reports the state turned over as part of its discovery response. Counsel simply chose not to request them until the day before trial. Due to the poor quality of the tapes, counsel determined they were of no use to the defense as exculpatory evidence. Counsel would have had time to consult an expert about the tapes and attempt an enhancement of the tape if he had acted in a timely manner.
Based on counsel's arguments below, it is evident that defendant and his attorney were not on good terms prior to trial. Yet counsel did not move the court to allow him to withdraw as counsel of record. He proceeded to trial, and did a competent job of representing defendant. He thoroughly cross-examined the state's witnesses, and made objections where pertinent. Defendant *411 does not show that he suffered specific prejudice from the court's refusal to grant a trial continuance. Nor does he show that the trial court abused its discretion.
Defendant also argues a continuance was in order based on additional discovery issues which arose in the course of trial. Defendant complains of the trial court's admission of photographs depicting a gray Oldsmobile, when he did not have access to the photos prior to trial. The state sought to introduce the photos during the testimony of victim Denise Wild. During a bench conference, defense counsel objected on grounds that the photographs had apparently been taken in November 2003, but that he had not been notified of their existence. The prosecutor responded that the automobile depicted in the photographs had been discussed in prior testimony, and that he would use the photographs simply as an identification tool. Defense counsel stated that he did not find the photographs "all that offensive." The judge ruled the photographs admissible for identification purposes. The judge noted that the witness had already described a car like the one in the photographs. Defense counsel then stated, "I'm not going to stop you from showing this to the witness, if you want to do that. Okay." In saying that, defense counsel essentially withdrew his objection to the photographs, and thereby failed to preserve the issue for appeal under LSA-C.Cr.P. art. 841.
Defense counsel also objected at trial to the introduction of photographs of injuries defendant was alleged to have inflicted on Theresa Celino when he robbed her. Counsel argued that he had made a general request for photographs in his discovery motion, but that the state had not given him access to those exhibits. Counsel further argued that the photographs of the injuries were unnecessary to the state's case, and would simply prejudice the jury. The prosecutor responded that the photographs were relevant to prove force and intimidation. He explained that it was common practice for defense attorneys to contact the district attorney's office with requests to see any physical evidence, including photographs. That system was intended to allow the prosecutor time to retrieve the requested evidence from various locations where it was stored. The prosecutor noted that defense counsel had not asked to see the photos prior to trial. The trial court allowed the three photographs to be admitted over defense counsel's objection.
The prosecutor subsequently questioned Celino regarding injuries defendant inflicted upon her when he robbed her. She testified that she had scratches on her nose and eye, injuries to her lower neck, and bruises on her arm. Celino testified that the photographs accurately depicted her injuries. The court, over defense counsel's objection, allowed Celino to show the photographs to the jury.
We find that the state's failure to turn over the photographs to defense counsel prior to trial is not reversible error. A police report concerning the Celino robbery was included in the state's discovery materials. In the narrative portion of the report is included information that a crime scene technician took photographs at the robbery scene. Defense counsel was sufficiently put on notice of photographs taken in association with that investigation. The state's failure to comply with discovery procedures will not automatically command reversal. The defendant must show prejudice in order for his conviction to be reversed. State v. Sweeney, 443 So.2d 522, 527 (La.1983).
*412 We find that defendant has shown no prejudice that would warrant a reversal of his conviction. Based on the foregoing, we find that the trial court did not err in denying defendant's motion for a continuance.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that his sentences, which total 110 years, are excessive. Specifically, defendant contends that the trial court erred in ordering that the sentences be served consecutively to each other.
Defendant filed a Motion to Reconsider Sentence below, arguing only that "[t]he sentences are Constitutionally excessive." The failure to file a motion to reconsider sentence, or to state a specific ground upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness. LSA-C.Cr.P. art. 881.1(E); State v. Dupre, 03-256, p. 7 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509. Defendant failed to explicitly state an objection to consecutive sentences in his motion, and is therefore not entitled to review of that issue here.
The only issue to be considered is whether defendant's sentences are constitutionally excessive. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Wickem, 99-1261, p. 10 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968 writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
The factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, 02-227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. Trial judges are granted great discretion in imposing sentences, and a sentence will not be set aside as excessive absent a clear abuse of that discretion. State v. Parker, 03-288, p. 4 (La.App. 5 Cir. 7/29/03), 853 So.2d 67, 69. The issue on appeal is whether the trial judge abused his discretion, and not whether another sentence might have been more appropriate. Id.
Prior to sentencing, the prosecutor informed the judge that defendant's criminal record included convictions for forcible rape and attempted simple burglary. The judge gave the following reasons for sentencing:
You are in need of correctional treatment sir, and/or a custodial environment in which you can receive the most effective treatment, which clearly is in an institution. A lesser sentence would deprecate the seriousness of your crimes.
Furthermore; you have been involved persistently in criminal activity and have demonstrated a propensity for violence. You've used threats and actual violence in the commission of your offenses. And finally; you used a dangerous weapon in the commission of the offenses.
Defendant could have received between ten and ninety-nine years for each of his three armed robbery convictions. His sentences of thirty years on each armed robbery count are near the lower end of the sentencing range. For attempted armed robbery, defendant could have received as *413 much as forty-nine and one-half years, and received a sentence of only ten years. For the purse snatching conviction, defendant's sentencing exposure was two to twenty years. His ten-year sentence was near the lower end of the sentencing range.
Based on the seriousness of defendant's offenses and his criminal record, we find that the trial court did not abuse its discretion in imposing defendant's sentence.

ASSIGNMENT OF ERROR NUMBER ONE & TWO (PRO SE)
In his motions for new trial and for post-verdict judgment of acquittal below, defendant argued that "[t]he verdict is contrary to the law and evidence in that there was insufficient evidence from which to convict." The judge summarily denied both motions.[3] In his pro se assignments of error, defendant argues that the trial court erred by not granting his motion for post-verdict judgment of acquittal and his motion for new trial. He contends that the state failed to produce sufficient evidence to support his convictions for armed robbery and attempted armed robbery. Defendant argues the state failed to prove that he possessed a dangerous weapon. Defendant further argues that the state failed to prove identity as to any of the offenses.
When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
Defendant filed post-trial motions for new trial and for post-verdict judgment of acquittal. In both motions, he alleged that the jury's verdicts on all counts were contrary to the law and evidence in that the evidence at trial was insufficient to support the convictions. The trial court denied both motions.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984). This is not a separate test from the Jackson standard; rather, it provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, *414 both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Barton, 02-163, p. 15 (La.App. 5 Cir. 9/30/03), 857 So.2d 1189, 1200, writ denied, 03-3012 (La.2/20/04), 866 So.2d 817.
Under LSA-R.S. 14:64, "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." An attempt occurs when the offender, "having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object."
Defendant argues that the state failed to prove the dangerous weapon element of the offenses, as it did not produce a weapon as evidence at trial. Defendant is correct in his assertion that the state did not produce a weapon at trial. This Court has found, however, that the production of a weapon or other physical evidence is not required for conviction of armed robbery as long as the state can establish all of the elements of the offense beyond a reasonable doubt through the testimony of witnesses. State v. Mills, 01-110, p. 13 (La.App. 5 Cir. 6/27/01), 790 So.2d 102, 108.
In the instant case, the state produced testimonial evidence that defendant possessed a gun at the time of each offense. Maria Gill, the victim on count 1, testified that defendant held a gun to her head. Theresa Celino, the victim as to count 2, testified that defendant had a gun at the time of the robbery. Noreen Johnson, the victim on count 3, testified that defendant put a gun to her face. Denise Wild, the victim on count 4, testified that defendant walked toward her car with a gun in his hand. Based on these testimonies, the evidence was sufficient to prove a dangerous weapon was used in the commission of the offenses charged in counts 1 through 4.
Defendant next complains that the state failed to prove he was the person who committed the offenses. Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Peden, 04-71, pp. 7-8 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 940.
At defendant's trial, Maria Gill testified that she identified defendant in a photographic lineup as the person who robbed her at her Metairie apartment complex. Gill also identified defendant in court. Theresa Celino testified that she got a good look at the perpetrator's face during the robbery at A Cool AC Supply. She identified defendant as the robber in a photographic lineup, and in court. Noreen Johnson identified defendant in a photographic lineup and in court as the person who robbed her at Boomtown Casino. Denise Wild testified that she got a good look at the driver of the car that followed her. She identified defendant as that man in a photographic lineup, and in court.
Katsuko Cox, the victim of the November 5, 2003 purse snatching charged in count 5, testified that she was not able to make a positive identification of the man who took her purse. She described the purse snatcher as a tall black man. She testified that she viewed a photographic lineup, and saw a man who looked like the perpetrator. But she did not feel sure enough to make a selection. The state attempted to link defendant to the crime through Cox's cell phone records.
*415 Cox testified that her cellular telephone was inside of her purse when the perpetrator took it. She thereafter reported the theft to the cell phone company. Cox identified State's Exhibit 2 as her Alltel cell phone invoice. She testified that she did not make the calls on the invoice that were dated November 5. Detective Dax Russo testified that he was the lead investigator on the Cox purse snatching. He learned that two of the telephone numbers called from Cox's cell phone on November 5 were listed to Arisa Pye and Sheryl Lee. Russo further testified that when he asked defendant about those two telephone numbers, defendant admitted he had made the calls from a silver flip phone. Russo said Cox's cell phone was a silver flip phone. Defendant told Russo he had borrowed the cell phone from someone in the street.
We find that the state proved that defendant was the person who committed the offenses. Thus, as to defendant's pro se sufficiency claims, we find there is no reversible error.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One issue is presented for review.
The trial court failed to impose statutory restrictions in sentencing defendant on count 4, the attempted armed robbery conviction. LSA-R.S. 14:27(3), requires that sentences for attempted offenses be imposed "in the same manner as for the offense attempted." LSA-R.S. 14:64(B) requires that armed robbery sentences be served without benefit of parole, probation, or suspension of sentence. The error does not require corrective action, as the provisions of LSA-R.S. 15:301.1 make the sentencing restrictions self-activating.
SENTENCE AND CONVICTION AFFIRMED
NOTES
[1] The victim's name is spelled "Gil" in the bill of information, and "Gill" in the trial transcript.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] LSA-C.Cr.P. art. 852 provides: "A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contrarily with the district attorney." While defendant does not raise the issue on appeal, it is noted that the trial court failed to comply with article 852's hearing requirement. The error does not require reversal. Defendant's motion was generic, and did not state with specificity the manner in which the verdict was incorrect, as is required. See, State v. Williams, 01-0554, p. 9 (La.5/14/02), 817 So.2d 40, 46.