SUSAN M. CHEHARDY, Judge.
 

 | .¡Michael L. Mollette appeals Ms conviction of second-degree murder. We affirm, for the reasons that follow.
 

 On October 7, 2004 Michael L. Mollette was indicted for second degree murder, a violation of La.R.S. 14:30.1. At arraignment the defendant pleaded not guilty. The defense filed an application for a sanity commission. After a hearing on March 2, 2005, the defendant was found competent to stand trial.
 

 The defense filed motions to suppress identification and to suppress statements, which were denied after a hearing on October 6, 2006. Jury selection commenced on November 13, 2006 and the trial took place the next day. On November 14, 2006 the twelve-member jury found the defendant guilty as charged. On December 5, 2006, the defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant now takes this timely appeal.
 

 FACTS
 

 Gail Gilmore testified that in the early morning hours of August 14, 2004, the defendant came to her home looMng for her brother, Harold Gilmore. She told the defendant she did not know Harold’s whereabouts.
 

 | ¡¡Rosetta Rousell, who is Harold Gilmore’s aunt, and Jeremiah Peterson, who is Harold’s uncle, were residents of the house in which Harold Gilmore was living. Both testified that after they went to sleep on August 14, 2004, they were awakened by a knock at the door. Both Rousell and Peterson said the person at the door identified himself as “Mike.” Rousell identified the defendant in court as the person at the door. She said he asked if Harold was there.
 

 Both Rousell and Peterson testified the defendant said that the victim owed him money. The defendant walked past Rou-sell and Peterson to the doorway of the bedroom in which Harold was sleeping. Rousell and Peterson each heard gunshots and saw muzzle flashes from a gun. Peterson testified he saw the defendant shoot in Harold’s direction.
 

 Earline Gilmore testified she was Harold Gilmore’s grandmother. She was asleep in the same bedroom as her daughter, Dorothy Gilmore,
 
 [1]
 
 and Harold, when she heard the defendant come in. Harold was sleeping on the floor. She saw the defendant stand in the middle of the bedroom door and shoot Harold “right down on the floor,” killing him.
 

 Rousell, Peterson, and Earline Gilmore testified that neither the victim nor the defendant said anything to each other before or during the shooting. Peterson also testified there was no physical interaction between the defendant and the victim before the shots were fired. After the defendant fired the shots, he left.
 

 Officer Jimmy Mendez with the Jefferson Parish Sheriffs Office (JPSO) testified that after taking separate statements from the witnesses, he learned the shooter was a black man named Michael.
 

 Detective Donald Clogher, formerly with the Jefferson Parish Sheriffs Office (hereafter “JPSO”) Homicide Section, testified he later learned from the | ¿witnesses that the perpetrator possibly had the last name of Mollette. According to Rousell, Dorothy Gilmore told the police the defendant’s
 
 *464
 
 last name. Later, both Gail Gilmore and Rousell positively identified the defendant in a photograph. Peterson testified he was unable to identify the person pictured in the two photographs he was shown. After both Rousell and Gail Gilmore identified the defendant, Detective Clogher obtained an arrest warrant. However, the defendant turned himself in before he was located by police.
 

 Detective Clogher testified the defendant was advised of his rights as part of the JPSO Rights of Arrestee or Suspects form. According to Detective Clogher, the defendant never made him aware that he was illiterate.
 

 Detective Clogher took three statements from the defendant.
 
 [2]
 
 The jury listened to the recordings of all three statements, and also read transcripts of the statements.
 

 In his first statement the defendant claimed he did not go to the victim’s house, he did not commit the murder, and he was not familiar with the incident.
 

 In the second statement, the defendant claimed the victim shot himself during a struggle.
 

 In the third statement, the defendant claimed he went in the bedroom to talk to the victim about stealing his car and the items in it. He said a scuffle ensued and the victim pulled out a gun, which went off when the victim tripped the defendant. The defendant stated the gun was fired at least twice. He claimed that the gun fired each time because the defendant’s hand hit the trigger. The defendant claimed he was not trying to kill the victim.
 

 | .ASSIGNMENT OF ERROR NUMBER ONE
 

 The defendant’s only assignment of error is that the trial court erred in denying the Motion to Suppress the Statements.
 
 [3]
 
 The defendant argues his confession was obtained through coercion because there were threats of arrest made against his family and because one of the officers held a gun pointed towards him.
 

 At the hearing on the motion to suppress, Detective Clogher testified that as part of Jefferson Parish procedure, he advised the defendant of his rights using the rights of arrestee or suspect form. According to Clogher, he completed the form with the defendant. Clogher testified the defendant signed the correct section of the form indicating that he read his rights, after initially signing in the wrong place.
 
 [4]
 
 Clogher said he read the defendant his rights aloud, and then he signed the appropriate section of the form indicating the same. The defendant indicated verbally that he understood his rights. The defendant also indicated that he understood his rights by initialing by each one of them on the form. In addition, the defendant verbally and in writing on the form indicated that he wished to waive his rights and give a statement. Detective Clogher said it appeared to him that the defendant clearly understood and acknowledged his rights.
 
 [5]
 

 
 *465
 
 The defendant gave three tape-recorded statements. Detective Clogher testified that Detective Rodrigue was present throughout the interview process, which included the taking of the defendant’s three statements. Detective Clogher testified the defendant was advised of his rights in detail before he gave his first | ^statement and again before he gave his second statement. Clogher also believed the defendant was re-advised of his rights before he gave a third statement.
 
 [6]
 

 According to Detective Clogher, the defendant never invoked his right to an attorney, never indicated that he did not understand the process or did not want to give a statement, and never stated that he wanted to stop being asked questions. When asked if the defendant freely and voluntarily continued to speak with him between the tape-recorded statements, Detective Clogher responded affirmatively. Detective Clogher testified that the defendant was not offered or promised anything in order to obtain his three statements. In addition, Detective Clogher had no recollection of telling the defendant that if he did not cooperate that charges might be brought against members of his family.
 

 In his first statement, the defendant claimed he had no knowledge of the incident. Detective Clogher testified that he continued to question the defendant after his initial statement because his statement was contradicted by the other facts in the case. Eventually, the defendant gave a second statement in which he admitted he was at the scene of the shooting. Subsequently, the defendant waived his rights and gave a third statement inculpating himself.
 

 At trial, Detective Clogher responded affirmatively when asked if the defendant freely and voluntarily gave a third statement. He responded negatively when asked if any threats were made, against the defendant or any of his family members including his mother and sister, during the entire interview process in order to obtain the statements. In addition, Detective Clogher responded negatively when asked if he made implied threats with a gun, or if any weapons |7were produced, showed, or pointed at the defendant in order to obtain the statements.
 

 At the suppression hearing, the defendant testified that he was told just to put his initial by every line on the papers. According to the defendant, the officers did not tell him or read him anything including his rights, until after he signed the papers. The defendant testified he was sure that he initialed and signed the form before it was read to him. The defendant also testified that the form was not explained to him.
 

 The defendant testified that both detectives told him if he did not cooperate they would arrest his mother and sister. He testified that he cooperated with the officers because he was scared and did not know the law, and one of the officers had a gun pointed at him. The defendant testified that he did not file a complaint against the officers because he was scared that he would be beaten. He testified that he tried to agree with the officers, even though he could not understand everything, after they threatened his mother and sister. The defendant claimed he did not know what was happening or understand what he was being told. According
 
 *466
 
 to the defendant, he just did what the officers asked him to because he was afraid they would harm his family.
 

 The defendant testified that he cannot read or write. He testified he only attended school until the ninth grade in special education, but he admitted he might have or probably told the officers that he attended school until the eleventh grade. The defendant answered negatively when asked, during questioning by the detectives, if he asked to speak to an attorney or stated that he wanted to discontinue answering questions. The defendant admitted he freely answered the detectives’ questions. Subsequently, the defendant explained that he continued to | sfreely answer the detectives’ questions and give statements throughout the process because the detectives threatened his mother and sister.
 

 The defendant admitted that although he had previous convictions for possession of crack cocaine and stolen property, as well as a conviction for simple robbery, he did not recall being advised of his rights when arrested for these prior offenses.
 

 After the hearing, the trial court denied the motion to suppress as to all three of the defendant’s statements. The trial judge stated, “The Court finds the credibility of the witness Mollette to be unacceptable. The Court believes ... the questioning took place in an appropriate manner; and as such, the defendant’s constitutional rights were protected, and that the motion to suppress the statements should be and is denied as to all three statements.”
 

 The defendant contends that because Detective Rodrigue, a critical witness to his claim of coercion, did not testify at the motion hearing or trial, the trial court could not make a well-founded decision on credibility. The defendant asserts that because Detective Clogher did not rebut the defendant’s testimony concerning the coercion, the State did not specifically address his allegations. The defendant contends the fact that he gave three statements shows there was coercion. He claims the three statements show that the officers had to overcome his will and this allows for the possibility that threats of physical violence and arrest were used.
 

 In addition, the defendant argues the police did not honor his decision to terminate the interview. He claims the fact that he was not booked after he told the officers he had nothing else to say at the end of his second statement, and the fact that he gave a third statement less than two hours later, are proof the police did not honor his right to remain silent and to terminate the interview.
 

 |sIn response the State asserts that Detective Clogher’s testimony proved the defendant was advised of his rights, initialed the form next to each of those rights, and waived his rights. In addition, the State claims that Detective Clogher’s testimony proved the defendant’s three statements were not obtained by fear, duress, intimidation, threats, coercion, or by promises made by either Detective Clogher or Detective Rodrigue, who were present at all the interviews.
 

 In addition, the State argues the defendant has not shown that he desired or attempted to terminate questioning at the end of the second interview. The State contends the defendant’s statement that he had nothing more to say or add at the end of his second statement was in response to the detective’s questions and, therefore, was not an invocation of his right to remain silent. The State claims the defendant never asked for an attorney or indicated that he wanted to stop answering questions. Finally, the State contends any error in the admission of the statements is
 
 *467
 
 harmless because there was overwhelming evidence of the defendant’s guilt, including eyewitness testimony that the defendant shot the victim.
 

 In
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court found that an interrogation must cease, if a suspect indicates in any manner prior to or during questioning that he "wishes to remain silent.
 
 State v. Taylor,
 
 01-1638, p. 6 (La.1/14/03) 838 So.2d 729, 739,
 
 cert. denied,
 
 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).
 

 Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his
 
 Miranda
 
 rights, that he voluntarily and intelligently waived his
 
 Miranda
 
 rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, | ininducement or promises. La. R.S. 15:451;
 
 State v. Franklin,
 
 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70,
 
 writ denied,
 
 03-3062 (La.3/12/04), 869 So.2d 817.
 

 The police are required to explain
 
 Miranda’s
 
 special procedural safeguards to the suspect before initiating a custodial interrogation that deprives the suspect of his freedom of action.
 
 State v. Payne,
 
 01-3196, p. 7 (La.12/4/02), 833 So.2d 927, 934. A statement obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary and, therefore, inadmissible.
 
 State v. Gregory,
 
 05-628, pp. 7-8 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 483.
 

 A determination of whether a waiver of constitutional rights was knowing and voluntary is made on a case-by-case basis, and such a determination rests upon the totality of the circumstances.
 
 State v. McGee,
 
 04-963, pp. 11-12 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 407,
 
 writ denied,
 
 05-0593 (La.5/20/05), 902 So.2d 1050.
 

 The State cannot rely on general disclaimers of inducements or promises.
 
 State v. McGee,
 
 04-963 at 11-12, 894 So.2d at 407. Rather, the State must specifically rebut the defendant’s allegations when claims of police misconduct in eliciting a confession are raised.
 
 State v. Blank,
 
 04-204, p. 10 (La.4/11/07), 955 So.2d 90, 103,
 
 cert. denied,
 
 — U.S.-, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). To determine whether the trial court’s ruling is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing, but also may consider pertinent evidence presented at trial.
 
 State v. Batiste,
 
 06-824, p. 10 (La.App. 5 Cir. 3/13/07) 956 So.2d 626, 634,
 
 writ denied,
 
 07-0892 (La.1/25/08), 973 So.2d 751.
 
 Id.
 

 Inin
 
 State v. Rose,
 
 05-770 (La.App. 5 Cir. 2/27/06), 924 So.2d 1107,
 
 writ denied,
 
 06-1286 (La.11/22/06), 942 So.2d 554, the defendant argued that the trial court erred in denying his motion to suppress his statement. The defendant claimed he told the police he was involved in the robbery in order to protect himself and his family.
 
 [7]
 
 The detective who took the defendant’s statement testified he advised the defendant of his rights using a JPSO standard rights of arrestee or suspect form. The defendant indicated he understood those rights, and signed the waiver of rights form. The detective also testified he did not force, threaten, or coerce the defendant to make a statement. He also did not offer or promise the defendant anything in
 
 *468
 
 return for making the statement.
 
 [8]
 
 Further, the detective testified the defendant did not appear to be frightened, did not tell him that someone had threatened him, and did not seem to be concerned about his family.
 
 [9]
 
 This Court noted that at the suppression hearing the defendant did not introduce evidence to support his contention that he gave the statement in order to protect himself and his family. In addition, at trial, the defendant did not offer corroborating evidence to support his claim, and implicated someone else in the robbery.
 
 [10]
 
 This Court found that the trial judge did not abuse his discretion in denying the motion to suppress the defendant’s statement.
 
 [11]
 

 In the present case, the defendant mistakenly claims that Detective Clogher did not rebut his testimony concerning the coercion. In fact, Detective Clogher specifically addressed whether there were any threats made against the defendant’s family members, when he responded negatively when asked if any threats were made against the defendant or his family during the entire interview process |1?including when the statements were taken. Detective Clogher testified that he and Detective Rodrigue were present throughout the interview process, which included the taking of the defendant’s three statements. Therefore, Detective Clogher would have known if the defendant and his family members were threatened.
 

 Detective Clogher also specifically addressed whether Detective Rodrigue threatened the defendant with a gun. Detective Clogher responded negatively when asked if any weapons were produced, showed, or pointed at the defendant in order to obtain the statements. Since Detective Clogher was the primary detective on the case and present throughout the interview process including the taking of the defendant’s three statements, he would have been aware if Detective Rodrigue had threatened the defendant with a gun.
 

 In addition, as in
 
 State v. Rose, supra,
 
 Detective Clogher testified that he advised the defendant of his rights and completed the waiver of rights form with the defendant, as part of the Jefferson Parish Sheriffs Office procedure. Detective Clogher testified that he read the defendant his rights aloud, and then he signed the appropriate section of the form indicating the same. The defendant verbally acknowledged that he understood his rights. The defendant also indicated that he understood his rights by initialing by each one of them on the form. The defendant further acknowledged, verbally and in writing on the form, that he wished to waive his rights and give a statement.
 

 Detective Clogher testified it appeared to him that the defendant clearly understood and acknowledged his rights. In addition, according to Detective Clogher, the defendant again was advised of his rights before he gave his statements. Detective Clogher testified the defendant never indicated that he did not understand the process or that he did not want to give a statement.
 

 | ^Contrary to the defendant’s assertion that the police did not honor his decision to terminate the interview after his second statement, Detective Clogher testified the defendant never stated that he wanted to stop being asked questions. According to Detective Clogher, the defendant freely
 
 *469
 
 and voluntarily continued to speak with him between the taped statements.
 

 It appears the trial judge’s determination that the defendant’s statements were freely and voluntarily given was based on Detective Clogher’s testimony. The trial court’s determination of admissibility of a statement, and its conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement, are entitled to great weight and will not be overturned unless unsupported by the evidence.
 
 State v. Allen,
 
 06-778, p. 12 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 752. The trial court did not abuse its discretion in determining the statements were admissible.
 

 Further, even if we were to find that the defendant’s statements were admitted in error, the admission of an involuntary confession is a trial error that, like the erroneous admission of other types of evidence, must be reviewed to determine whether it was harmless.
 
 State v. Leger,
 
 05-0011, pp. 39-40 (La.7/10/06), 936 So.2d 108, 140,
 
 cert. denied,
 
 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Such an error is harmless, if it does not affect substantial rights of an accused. La. C.Cr.P. art. 921. The error is harmless if it is unimportant in relation to the entire case and the verdict was unattributable to the error.
 
 State v. Leger,
 
 05-0011 at 40, 936 So.2d at 140.
 

 Based on the testimony of three eyewitnesses who knew the defendant, the State provided overwhelming evidence of the defendant’s guilt. Therefore, erroneous admission of the defendant’s statements is harmless, since the guilty 114verdict is unattributable to the error.
 
 See Leger,
 
 05-0011 at 40—41, 936 So.2d at 140-41.
 

 We find no merit to this assignment.
 

 ERROR PATENT DISCUSSION
 

 The defendant requests a patent error review. Regardless whether a defendant makes such a request, this Court routinely reviews the record for errors patent, in accordance with La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 Our review reveals two patent errors. Specifically, there are two discrepancies between the transcript and the commitment/minute entry:
 

 (1) The sentencing transcript indicates that the defendant’s sentence is to be served at hard labor, while the commitment/minute entry does not indicate hard labor.
 

 (2) As noted in the Chronological Index, the commitment has conflicting dates. The commitmeni/minute entry states that the “defendant was sentenced to life in prison on December 5, 2006.” However, a notation-above the trial judge’s signature indicates that the trial judge signed the commitmeni/minute entry “this 6 day of December in the year 2006.” In addition, the date at the top of the form has been changed and, contrary to the notation in the Chronological Index, is unreadable. The sentencing transcript indicates that the defendant was sentenced on December 5, 2006.
 

 When there is a discrepancy between the transcript and the commitment/minute entry, the transcript will prevail.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 Therefore, we remand this case to the district court for correction of the commitment/minute entry to conform with the transcript regarding the inclusion of h.qhard labor in the sentence, as well as by designating the proper commitment date.
 
 See State v. Johnson,
 
 06-859, pp. 14-15
 
 *470
 
 (La.App. 5 Cir. 4/11/07), 957 So.2d 833, 841;
 
 State v. Gassenberger,
 
 02-658, p. 5 (La.App. 5 Cir. 12/11/02), 836 So.2d 271, 274. We direct the clerk of court to transmit the original of the corrected eommitment/minute entry to the officer in charge of the institution to which the defendant has been committed.
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed, and the case is remanded to the trial court for correction and transmission of the commitment/minute entry as directed above.
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF PATENT ERRORS.
 

 [1]
 

 . Dorothy Gilmore was mother to both Harold and Gail Gilmore; she died prior to trial.
 

 [2]
 

 . All three of the defendant's statements were played for the jury. (R., pp, 297, 299, 301).
 

 [3]
 

 . The suppression hearing was bifurcated, in that the trial court handled the motions to suppress the identifications and the statements separately. The written motions to suppress statements and identifications do not appear in the record. On appeal, the defendant challenges only the ruling on the motion to suppress his statements.
 

 [4]
 

 . The defendant’s transcribed August 16, 2004 statement given at 10:00 p.m. includes a description of this incident.
 

 [5]
 

 . Deputy Clogher’s trial testimony was substantially similar to his testimony at the suppression hearing.
 

 [6]
 

 . The transcript of the defendant’s third statement reflects that the defendant responded affirmatively when asked by Detective Ro-drigue if he was advised of rights using the "Rights of Arrestee or Suspects Form.” The defendant also responded affirmatively when asked if he was still aware of those rights, and when asked if he was freely speaking to the detectives.
 

 [7]
 

 .
 
 Rose,
 
 05-770 at 8, 924 So.2d at 1111.
 

 [8]
 

 .
 
 Rose,
 
 05-770 at 9, 924 So.2d at 1112.
 

 [9]
 

 .
 
 State v. Rose,
 
 05-770 at 10, 924 So.2d at 1112.
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 Id.