853 So.2d 71 (2003)
STATE of Louisiana
v.
Charles E. BATES.
No. 03-KA-352.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2003.
*72 Paul D. Connick, Jr., District Attorney, Margaret E. Hay, Terry M. Boudreaux, Nancy A. Miller, Assistant District Attorneys, Gretna, LA, for State.
Holli Herrle-Castillo, Marrero, LA, for defendant-appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. MCMANUS.
CLARENCE E. McMANUS, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Charles Bates, with distribution of cocaine, a violation of LSA-R.S. 40:967(A). The defendant pled not guilty at arraignment. On May 14, 2002, a twelve-person jury found the defendant guilty as charged. Defendant was sentenced on May 22, 2002 to serve fifteen years of imprisonment at hard labor.
Thereafter, the State filed a multiple offender bill of information alleging defendant to be a third felony offender based on two previous convictions. The State commenced the multiple offender hearing but amended the multiple bill to allege defendant to be a second felony offender. After defendant executed a multiple offender waiver of rights form, the trial judge advised defendant of his multiple offender rights, and accepted his stipulation that he was a second felony offender. The trial *73 judge vacated the original sentence and imposed a multiple offender sentence of fifteen years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed.
FACTS
On May 3, 2000, Agent Megan Carter, a narcotics agent with the Jefferson Parish Sheriff's Office, was working undercover with the Kenner Police Department driving a vehicle equipped with video and audio recording devices, as well as an audio transmitter. Detective George Ansardi was a member of the surveillance team and monitored the transaction at issue on the audio transmitter.
At trial, Agent Carter testified that she pulled into a trailer park at 150 West Airline Highway in Kenner and stopped her vehicle. Agent Carter asked a woman there, later identified as Natalie Turner, if she knew where to obtain a "20," which Agent Carter explained was street language for one rock of crack cocaine. Turner replied that she could help her and that a man was on his way over to Turner's trailer to bring some crack cocaine. Turner also stated that a friend of hers in the trailer park had some crack cocaine. Turner then walked through the trailer park and talked to someone as Agent Carter followed slowly in her vehicle.
Turner returned to Agent Carter's vehicle and explained that the man who was on his way to Turner's trailer was the son of a man (later identified as defendant) who lived in the trailer park. Turner also told Agent Carter that the son was the person whom she really ought to deal with, but that "this guy's cool too." The defendant walked up to Agent Carter's vehicle, and Agent Carter said, "You got that bro?" The defendant said to "hold up," and walked away from the car for a moment. Agent Carter said she would turn the car around, and defendant replied that was okay. Agent Carter drove to the front of the trailer park and waited while defendant and Turner were inside of another trailer near the entrance of the park. Agent Carter testified that when the defendant returned to her car, she exchanged $20 for one rock of crack cocaine with defendant.
The videotape of this transaction was played for the jury at trial. According to Agent Carter, the rock-like object that defendant sold her weighed .10 gram.
After the transaction, Agent Carter gave Detective Ansardi the rock-like object and the videotape of the transaction. The State's narcotics expert, Charles Krone, testified the rock-like substance tested positive for the presence of cocaine. Mr. Krone testified that he did not weigh the material because the material was in "small fragments" when he received it.
Sometime after the transaction, Detective Ansardi obtained still photographs from the videotape and showed them to a confidential informant, who supplied the defendant's name to the police. After viewing a photographic lineup prepared by Detective Ansardi, Agent Carter identified the defendant as the person who sold her the crack cocaine. Agent Carter also positively identified defendant at trial.
DISCUSSION
Defendant contends that the evidence was insufficient to convict him of distributing cocaine as he established a defense of entrapment. The State asserts that the evidence was sufficient to support defendant's conviction and that defendant failed to meet his burden of proving entrapment.
The constitutional standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that a conviction be based on proof sufficient *74 for any rational trier of fact, viewing all of the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. See, State v. Bishop, 01-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. The defendant was convicted of violating LSA-R.S. 40:967(A), distribution of cocaine. Pursuant to that statute, the State was required to prove that defendant knowingly or intentionally distributed cocaine. See, State v. Raines, 00-1941, p. 7 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.
Entrapment is a defense that arises when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces the person to engage in conduct constituting the offense when that person is not otherwise disposed to do so. State v. Brand, 520 So.2d 114, 117 (La.1988); State v. Petta, 98-745, pp. 7-8 (La.App. 5 Cir. 2/10/99), 729 So.2d 29, 32, writ denied, 99-0692 (La.9/3/99), 747 So.2d 533, cert. denied, 528 U.S. 1125, 120 S.Ct. 956, 145 L.Ed.2d 830 (2000).
The entrapment defense is composed of two elements, which are (1) an inducement by a state agent to commit an offense, and (2) the lack of defendant's predisposition to commit the offense. The defendant has the burden of proving by a preponderance of evidence that a state agent induced him to commit a crime. Once the defendant meets this burden, the State has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement. State v. Lewis, 01-1084, p. 6 (La.App. 5 Cir. 3/13/02), 815 So.2d 166, 171, writ denied, 02-1053 (La.11/15/02), 829 So.2d 424.[1]
However, it is not entrapment if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. As stated by the Louisiana Supreme Court, "In entrapment line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." State v. Brand, 520 So.2d at 116; Accord, State v. Petta, supra.
The first inquiry is whether defendant proved by a preponderance of the evidence that he was induced to commit the crime. If so, the next inquiry is whether the State adduced evidence of the defendant's predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime, rather than the State's inducement that caused the defendant's conduct. State v. Petta, supra.
Addressing an entrapment defense in Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the United States Supreme Court commented on undercover narcotics operations:
Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the *75 criminal act amply demonstrates the defendant's predisposition. See United States v. Sherman, 200 F.2d 880, 882 (C.A.2 1952).
Jacobson, 503 U.S. at 549-550, 112 S.Ct. at 1541.
The record reflects that rather than inducing defendant Agent Carter merely furnished defendant the opportunity to distribute crack cocaine. Agent Carter testified that she had never met Turner or defendant before the day of the offense. Agent Carter further testified that she had never spoken to defendant until he approached her vehicle. Additionally, defendant, not Agent Carter, directed the sequence of the events leading up to the drug transaction. After Agent Carter made known her desire to purchase cocaine, she simply waited until the defendant brought the cocaine to her vehicle. Defendant's willingness to commit commission of the crime demonstrates his predisposition to do so.
The videotape depicts the defendant returning from the trailer with something in his hand and putting something in his pocket after Agent Carter said, "thank you." Agent Carter testified that she gave defendant $20 for the object in defendant's hand, which was a rock of crack cocaine. The jury apparently believed Agent Carter's testimony that the defendant sold her crack cocaine. In State v. Deruise, 98-0541, p. 26 (La.4/3/01), 802 So.2d 1224, 1243, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court reiterated that "[t]he trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness." It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Hotoph, 99-243, p. 12 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
Considering the foregoing, the drug transaction between Agent Carter and the defendant merely provided an opportunity for him to commit a crime for which he was predisposed. Thus, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt, that the defendant's predisposition, independent of the State's actions, caused him to distribute cocaine. This assignment merits little consideration.
The defendant next argues that he received an illegal sentence because the trial judge imposed the entire multiple offender sentence without benefit of parole. The defendant further contends that only the first two years of the sentence should be without benefit of parole. The State maintains that the defendant's sentence is illegal, but contends that the first five years of the sentence should be served without benefit of parole.
When a defendant is sentenced as a habitual offender, "[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Taylor, 99-385 (La.App. 5 Cir. 8/31/99), 743 So.2d 749, 754 (citing State v. Bruins, 407 So.2d 685, 687 (La.1981)). Further, the applicable penalty provision is the one in effect at the time of the commission of the offense. State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520; Accord, State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354.
At the time defendant committed the instant offense on May 3, 2000, distribution of cocaine was punishable by imprisonment at hard labor for not less than five years nor more than thirty years, with the first *76 five years of the sentence served without benefit of parole, probation, or suspension of sentence. See, LSA-R.S. 40:967(B)(4)(b), West 2000. However, in 2001, the Louisiana Legislature reduced the amount of imprisonment to be served without parole eligibility from five to two years. See, 2001 La. Acts 403, § 4.
Both the sentencing transcript and the commitment reflect that, on February 5, 2003, the trial judge imposed defendant's multiple offender sentence without parole eligibility for the entire term of imprisonment. In accordance with the law in effect when the crime was committed, the trial judge should have restricted parole eligibility for the first five years of the sentence. According to LSA-C.Cr.P. art. 882(A), "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." In State v. Lewis, 815 So.2d at 178, the trial court improperly restricted parole eligibility when sentencing defendant as a multiple offender. This Court found that the sentence was illegal, amended the sentence to delete the word "parole" and remanded for the trial court to correct the commitment to reflect the amendment.
Accordingly, we amend the defendant's sentence to provide that only the first five years of the defendant's sentence is served without benefit of parole, and remand the matter for the trial court to correct the minute entry and commitment to reflect the amendment.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented:
The record reveals that the trial judge failed to advise the defendant of the prescriptive period for filing post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. In such cases, this Court has remanded the matter and instructed the trial court to send appropriate written notice to defendant of the prescriptive period for post-conviction relief, and to file written proof in the record that defendant received the notice within ten days of the rendering of the opinion. State v. Badeaux, 01-406, p. 12 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 241, writ denied, 01-2965 (La.10/14/02), 827 So.2d 414.
Next, we note that there are several discrepancies between the transcript and the corresponding minute entries in the record. First, minute entry number five indicates the proceedings were conducted on April 23, 2002 while the transcript indicates the proceedings occurred on April 24, 2002. Next, minute entry number six indicates that the first day of trial was on May 8, 2002, while the transcript indicates the date was May 13, 2002. Finally, we point out that there are two minute entries for October 23, 2002. Both entry numbers 11 and 12 contain the same date and virtually the same information. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand this matter to the trial court to correct the dates on the minute entries to conform with the corresponding transcripts. Further, we order the trial court to reconcile the two minute entries for October 23, 2002 so that there is only one minute entry for that one date.
CONCLUSION
Based on the foregoing, we affirm defendant's conviction and sentence as amended *77 and remand this matter for further proceedings consistent with this opinion.
AFFIRMED AS AMENDED; REMANDED FOR FURTHER PROCEEDIGNS.
NOTES
[1] Accord, State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1238, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597.