ROBERT M. MURPHY, Judge.
|sDefendant, Gary Workman, appeals his convictions and sentences for attempted aggravated rape and multiple counts of possession and distribution of pornography involving juveniles. For the reasons that follow, defendant’s convictions and sentences are affirmed. We remand this case to the trial court with instructions to correct an error patent on the face of the record.

STATEMENT OF THE CASE

On June 5, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant, Gary L. Workman, with one count of attempted aggravated rape of a twelve-year-old juvenile, in violation of La. R.S. 14:27 and 14:42 (count one). Defendant pled not guilty to the charged offense at his arraignment on June 6, 2012. On July 19, 2012, the State filed an amended bill of information adding four counts of pornography involving juveniles under the age l4of thirteen, violations of La. R.S. 14:81.1 (counts two, three, four, and five). Defendant pled not guilty to the additional charges on July 24, 2012.
Prior to trial, several pre-trial motions were filed, including a motion to suppress statement, which was heard and denied on February 25, 2014. Trial commenced before a twelve-person jury on the same day. On February 27, 2014, the jury returned a verdict of guilty as charged on all five counts.
Prior to sentencing on March 10, 2014, defendant’s motion for new trial was heard and denied by the trial court. After waiving sentencing delays, the trial court sentenced defendant to fifteen years imprisonment at hard labor on count one, ten years imprisonment at hard labor on counts two, three, and four, and five years imprisonment at hard labor on count five. The trial court further ordered counts one through four to be served consecutively to each other and count five to be served concurrently with the sentences imposed on defendant’s 'other counts. All counts were ordered to be served without benefit of probation, parole or suspension of sentence, and defendant was advised of his sex offender notification requirements.
Immediately after sentencing, defendant made an oral motion for appeal, and then filed a written motion for appeal which was granted by the trial court on the same day — March 10, 2014. The instant appeal follows.

FACTS

Detective Jessica Cantrell Zuppardo of the Kenner Police Department testified that an anonymous tip was reported to her office concerning an advertisement published on the online website “Craig’s List.” Detective Zuppardo testified that the advertisement was found in the personal section, under “Casual Encounters,” and was titled “Somebody’s Daughter.” After clicking on the title, the content of the advertisement read: “[ejvery woman is somebody’s daughter. |fiDo you have a daughter you could bring to me? I’d love to do somebody’s daughter.” Based on the language used in the advertisement, Detective Zuppardo contacted Special Agent Jamie Hall of the Federal Bureau of Investigations (FBI), who took over the investigation. Detective Zuppardo testified that she again became involved in the investigation when Agent Hall set up “a meet” with defendant in April of 2012. Detective Zuppardo explained that Agent Hall had arranged for defendant to meet, what defendant believed to be, a twelve-year-old girl to have sex with at a specified location in Kenner. Detective Zuppardo and Agent Hall set up surveillance near 2850 Idaho Avenue — the apartment complex address defendant was provided, and waited for defendant to arrive. Detective *284 Zuppardo testified that Special Agent Tira Lucas followed defendant when defendant left his residence. Defendant’s vehicle proceeded down Idaho Avenue at which time a traffic stop was effectuated in front of the apartment complex by Kenner Police Officer Ethan Hales. Defendant was placed in custody and an inventory search of his vehicle was performed. Inside his vehicle a post-it note, which had the address of the apartment complex on Idaho Avenue written on it, was tom in half and recovered from the passenger side floorboard.
Defendant was transported to the Ken-ner Police Department where he was interviewed by Detective Zuppardo and Agent Hall. Prior to interviewing defendant, Detective Zuppardo testified that defendant was read his Miranda[1] rights from an Advice of Rights Form, which defendant signed, waiving his rights. Detective Zuppardo stated that she did not force, coerce or promise anything to defendant in exchange for his statement. She further stated that Agent Hall also provided defendant with an FBI Advice of Rights Form. Detective Zuppardo explained that Agent Hall, as the primary interviewer, asked the questions during | fithe interview while she took notes. She testified that during the interview defendant admitted to posting the reported advertisement on Craig’s List and further admitted to having contact with a man by the name of “Savage” who was actually undercover Special Agent Hall. Defendant also admitted to sending a picture of his niece getting out of the shower and other child pornography via email to Agent Hall. Defendant stated that he used the directions provided by Agent Hall to drive to the apartment complex on Idaho Avenue with the intent of trying to have sex with a twelve-year-old girl. Specifically, defendant stated “[i]f I couldn’t have sexual intercourse, then I wouldn’t want to do anything else with the girl.” Defendant admitted to owning a personal computer and admitted to having sent child pornography through several different sources in the past. He further stated that at one time, he attempted to make contact with an eleven-year-old girl through a man named “Ron Anderson,” who had previously sent defendant child pornography.
Special Agent Jamie Hall of the FBI testified that he was contacted by Detective Zuppardo concerning an anonymous tip reported to the Kenner Police Department regarding a posting on Craig’s List. Agent Hall testified that he investigated the posting further because he believed that the person who posted the advertisement was looking for someone under the age of sixteen based on the phrase “a daughter you could bring to me,” implying the daughter would not be of driving age. Through the link provided in the advertisement, Agent Hall replied to the post using the moniker “Savage.” The person replied back to Agent Hall using the moniker “Kyabeah.” Agent Hall testified that the email communications between the two of them lasted approximately one month, and included the transmittal of several images he deemed to be child pornography.
17Agent Hall explained in detail his email conversations with defendant. He testified that he initiated contact with defendant by responding to his post with the following: “what are you looking for, in particular? I may have something.” Eventually, over the course of several email correspondences, Agent Hall testified that defendant confirmed his intent by stating, “[a] guy I met online was wanting me to break in his 11-year old daughter. *285 Something like that?”[2] When asked what happened with the eleven-year-old, defendant replied that he would have “gone through with it,” but the person stopped communicating. Defendant then asked Agent Hall, “[s]o you got someone we can ... you know?” Due to the sexual nature of the previous email correspondences, Agent Hall explained that he believed defendant was requesting that he provide him with a minor to have sex with. Thus, Agent Hall responded that he “might have access to a 12-year-old girl,” and later inquired as to what defendant would want to do to her. Defendant responded with his intent to have oral and vaginal sex with the minor. Specifically, defendant stated that he wanted to “lick her little c* *t then have her suck me, then cum inside her p* * *y.” Agent Hall then asked defendant if he had any pictures or videos from other similar “escapades” to which defendant replied, “[n]ot on my own. Some a guy sent me.” Throughout their correspondence, Agent Hall testified that in total, defendant sent him five emails containing various images: one depicting a clothed juvenile, one depicting a naked juvenile from behind (sent twice), and three PDF images containing two pictures each of child pornography. In later correspondence, defendant emailed Agent Hall stating, “I think I remember you saying you may has (sic) access to a 12-year old.”[3] ^Facilitating defendant’s opportunity for him to act on his intent, Agent Hall responded, “[ijndeed, I do have access to have a 12-year old.” Defendant then replied, “[y]ou share?” to which Agent Hall posed the question, “videos?” Defendant responded, “[w]ell that, too. I was talking about sharing the 12-year-old” and “does she like you doing her, or is it something forced on her?” Defendant later stated, “would you like to watch me f* * * her?” prompting Agent Hall to respond, “[yjour call on that.” Defendant then questioned, “[wjould she let me? When can we do it?” and provided his dates of availability.
A time and date were arranged and defendant was provided the address to an apartment complex located at 2850 Idaho Avenue, apartment 211. Defendant was apprehended in front of the designated meeting location and transported to the Kenner Police Department where he provided a statement. Agent Hall confirmed that defendant was read his Miranda rights twice, both by Detective Zuppardo and himself, and that defendant waived them prior to giving his statement. Agent Hall testified that prior to the interview he informed defendant that federal law prohibits lying to a federal agent during a federal investigation. Defendant then proceeded to tell Agent Hall that he went to the address on Idaho Avenue to meet someone by the name of “Savage,” whom he believed was offering him a twelve-year-old girl to have sex with; however, he further stated that he intended on calling the police when he arrived if the invitation turned out to be true. Once confronted with portions of the email correspondences between himself and “Savage,” defendant admitted to posting the Craig’s List advertisement and communicating with a man named “Savage” whom he believed lived in the apartments on Idaho Avenue and to *286 whom he sent six child pornographic images to. He admitted that one of the photographs was of his niece getting out of the shower, and one of the images was of a young girl lying on her back with an adult male ejaculating on her.
|flDefendant further confessed that he went to the apartment complex on Idaho Avenue to have sex with a twelve-year-old female and that he was planning on going through with it but that if he could not “get it up he would have left and done nothing else.” He explained that he wrote down the Idaho Avenue address on a post-it note which was on the floorboard of his truck. He also stated that he had sent child pornography to more than one person on previous occasions. Defendant further indicated that he had been in contact with a person named Ron Anderson who had an eleven-year-old girl that he was trying to get defendant in touch with for the purpose of having sexual intercourse. At the end of the interview, defendant stated that he wanted to “veer away from becoming a pedophile” and begged Agent Hall and Detective Zuppardo to let him go, promising that he would never do it again.
Agent Hall testified that a federal search warrant was issued for defendant’s residence and upon execution of the warrant, defendant’s computer was seized. The images found on defendant’s computer were forwarded to the National Center for Missing and Exploited Children who identified at least three of the minor victims in the images.
Special Agent Timothy Lucas of the FBI testified that he conducted surveillance on defendant and reported to Agent Hall when defendant was en route to the designated meeting place. Agent Lucas testified that defendant left his residence approximately five minutes after the meeting location was provided to him. He further testified regarding the route used by defendant to get to the specified location, which was approximately five miles from defendant’s residence. After defendant was stopped in front of the meeting location, Agent Lucas, pursuant to a search warrant, performed a search of defendant’s residence from which a computer and scanner were seized.
110Computer forensic examiner expert Special Agent Lawrence Robinson of the FBI testified regarding the evidence he obtained from a “USB thumb drive” and a hard drive from the “Compaq computer” seized from defendant’s residence. He testified that he processed the content of the seized evidence into a “user-friendly format” so Agent Hall could review the material and “bookmark” the information pertinent to the investigation. Agent Robinson then drafted a report with the bookmarked information found to be relevant by Agent Hall. The pertinent images found on defendant’s hard drive were described and shown to the jury. Agent Robinson further testified that the computer user name used to view and/or generate the images was “Kyabeah.” Agent Robinson confirmed that several of the images at issue were scanned onto defendant’s computer in March of 2012.
Defendant testified that in 2012, he was conducting research on human behavior. 'While researching, he responded to a “chat” from someone using the moniker “Koala 211” or “215” from New Zealand. He testified that the man sent him icons, which he saved to his computer, not knowing their content. Once he opened the images and discovered they contained child pornography, he stated that he deleted them. Sometime later, while conducting maintenance on his computer, he learned that the images still existed. He testified that he attempted to permanently delete the photographs but that they reappeared. At some point, he downloaded the photo *287 graphs, printed them, and re-submitted them under a new file named “Koala New.” He testified that he was told that if a file is renamed, it can then be permanently deleted. He believed the images were finally deleted when he received a message that stated, “file no longer exists.” Defendant denied that he was into child pornography and stated that he has never purchased child pornography magazines or videos.
1 n Defendant testified that he posted an advertisement on Craig’s List as part of his behavioral research. He explained that the posting was intended to attract adults and that he never intended to attract a child. He stated that he received a few responses to the posting, including one from “Ron Anderson” and another male, “Endavin,”[4] who told defendant that he had been molested by his brother. Defendant met Endavin in person who relayed his history of sexual abuse to defendant. Three weeks later, he stated that he learned from Endavin that there were children being abused in “New Denham Springs,” Louisiana. He testified that he also received another response to his posting by someone named “Savage,” who at the time he believed was connected to “Endavin” and might have been the same person he had had previous contact with (who’s moniker was “Seattle 038 a/k/a Hot Tot Boy”), and who defendant knew to be into child pornography.
Defendant testified that his intent in responding to Savage was to find out if “Savage” was the same person as “Seattle 038.” In order to gain the confidence of “Savage,” defendant explained that he sent a photograph of a girl in clothing. He testified that he could not explain how the photographs he received from “Koala” containing the child pornographic images were sent to “Savage” because he did not remember sending them, and thought that they could not be sent because they , had been deleted. Defendant admitted to sending photographs of adult women to “Savage.” He further denied having the intent to have sex with a twelve-year-old girl when he went to the address on Idaho Avenue. He stated that his intent was to see if the address was real and did not plan to stop or go inside. He testified that he was afraid that “Savage” was molesting children and did not want to “falsely accuse anyone” so he wanted to verify the address before reporting “Savage” to the police.
| ^Defendant testified that he attempted to explain the situation to Agent Hall but was told, on two occasions, that it is a federal crime to lie to a federal agent. He denied admitting that he intended on going to the address to have sex with a twelve-year-old. He also denied intentionally intending to distribute child pornography. ASSIGNMENT OF ERROR NUMBER TWO[5]
The evidence was insufficient to support the jury’s verdict.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE

“The trial Court should have found Entrapment.”

*288
DISCUSSION

Defendant argues the evidence was insufficient to support the requisite element of intent with respect to the convicted crimes in this case, and that the jury-should have found that his case was one of entrapment. He maintains that there existed “significant reasonable doubt” as to whether he had any criminal intent or was merely acting as a “misguided vigilante.” Defendant concludes that the, “plausible explanation” that he was “on the trail of child predators, should have been enough to create reasonable doubt as to his intent.”
In response, the State argues it met its burden of proof that defendant had the requisite intent for attempted aggravated rape of a juvenile under the age of thirteen, and possession and distribution of pornography involving juveniles.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the' crime have been proven beyond 11sa reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. Id.; State v. Price, 00-1883, p. 5 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184.
In this case, defendant was convicted of one count of attempted aggravated rape of a twelve-year-old juvenile, in violation of La. R.S. 14:27 and 14:42, one count of possession of pornography involving a juvenile under the age of thirteen, and three counts of distribution of pornography involving juveniles under the age of thirteen, violations of La. R.S. 14:81.1.
Count One — Attempted Aggravated Rape:
As applies here, aggravated rape occurs where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed on a victim under the age of thirteen years. La. R.S. 14:42(A)(4). An attempt is committed when a defendant, after having formed the specific intent to commit rape, does an act for the purpose of and intending directly toward the accomplishing of the objective. La. R.S. 14:27(A). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act. La. R.S. 14:10(1).
114Pefendant contends that there was reasonable doubt as to whether he had “any criminal intent or was just a misguided vigilante.” At trial, Special Agent Hall testified that he responded tó defendant’s advertisement on Craig’s List which read, “[ejvery woman is somebody’s daughter. Do you have a daughter you could bring to me? I’d love to do somebody’s daughter,” using the moniker “Savage.” Over the course of a month, Agent Hall and defendant communicated often via email correspondence. During this time period, defendant expressed his interest in having sexual intercourse with a twelve-year-old girl. Specifically, when asked by Agent Hall what defendant was “looking for,” defendant replied, “[a] guy I met online *289 was wanting me to break in his 11-year-old daughter. Something like that?” He .further admitted to Agent Hall that he would have “gone through with it” but the person stopped communicating with him. Agent Hall informed defendant that he “might have access to a 12-year-old girl” and later inquired as to what defendant would want to do to her. Defendant stated that he wanted to “lick her little c* *t then have her suck me, then cum inside her p* * *y.”
Sometime later, defendant followed up with Agent Hall’s previous statement inquiring, “I think I remember you saying you may has (sic) access to a 12-year old[?]” When Agent Hall answered affirmatively, defendant asked whether he would “share” the “12-year-old,” and asked Agent Hall “does she like you doing her, or is it something forced on her?” He also asked Agent Hall whether he would like to “watch [him] f* *k her?” Allowing defendant to lead the conversation, Agent Hall responded, “your call on that,” to which defendant responded, “when can we do it?” and provided his dates of availability-
A date, time, and location were arranged. Surveillance of defendant tracked his movements from his residence to the address provided by Agent Hall on Idaho Avenue where defendant believed the twelve-year-old would be. Defendant was | ^apprehended in front of the apartment complex on Idaho Avenue at the appointed time, and the address of the location was found written on a post-it note inside defendant’s vehicle.
Defendant was taken into custody and after waiving his Miranda rights, gave a statement to the police. Although defendant initially stated that he went to the designated meeting location to confirm the presence of a pedophile and report his findings to the police, he ultimately admitted to going to the address on Idaho Avenue to meet a twelve-year-old girl to have sex with. He further told Agent Hall and Detective Zuppardo that if he could not have sexual intercourse with the girl, then he “wouldn’t want to do anything else.” Despite his confession, defendant testified at trial that he did not intend on having sex with a twelve-year-old girl, claiming that he was conducting research on human behavior and that the email communications between himself and Agent Hall (a.k.a “Savage”) were part of his attempt to track down child predators. Further, he claimed that he went to the address on Idaho Avenue to confirm that it was “real” and that he intended on reporting his findings to law enforcement officials.
The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness: It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443; State v. Falcon, 06-798, p. 11 (La.App. 5 Cir. 3/13/07), 956 So.2d 650, 657. It is apparent that, after considering the credibility of the witnesses and weighing the evidence, the jury did not believe defendant’s account of the events and his “vigilante” defense. Thus, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that defendant had the specific intent to commit aggravated rape upon a victim under the age of |lfithirteen and committed an act for the purpose of and intending directly toward accomplishing that objective.
Counts Two, Three, and Four — Distribution of Pornography Involving Juveniles; Count Five — Possession of Pornography Involving a Juvenile:
Next, defendant claims the State failed to prove intent with respect to his *290 convictions for possession and distribution of child pornography. Since the only statutory element of the crimes challenged by defendant is the element of intent, the sufficiency of the evidence with respect to the remaining statutory elements need not be addressed.[6] See State v. Henry, 13-558, p. 22 (La.App. 5 Cir. 8/26/14), 138 So.3d 700, 715; State v. Ramirez, 09-350, p. 8 (La.App. 5 Cir. 12/29/09), 30 So.3d 833, 840; State v. King, 05-553, pp. 7-10 (La.App. 5 Cir. 1/31/06), 922 So.2d 1207, 1211-13, writ denied, 06-1084 (La.11/9/06), 941 So.2d 36.
At the time of the commission of the crime, pornography involving juveniles, a violation of La. R.S. 14:81.1 provided, in pertinent part:
A. (1) It shall be unlawful for a person to produce, distribute, possess, or . possess with intent to distribute pornography involving juveniles.
“Distribute” means to issue, sell, give, provide, lend, mail, deliver, transfer, transmute, distribute, circulate, or disseminate by any means. La. R.S. 14:81.1(B)(3). “Pornography involving juveniles” is any photograph, videotape, film or other reproduction, whether electronic or otherwise, of any sexual performance[7] involving a child under the age of seventeen. La. R.S. 14:81.1(B)(5).
117Pornography involving juveniles is a general intent crime. See State v. Cinel, 94-0942 (La.11/30/94), 646 So.2d 309, cert. denied, 516 U.S. 881, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).
First, as detailed above, defendant evidenced his intent to possess and distribute pornography involving juveniles by confessing to these crimes. Additionally, in support of the offenses of possession and distribution of pornography involving juveniles, the State introduced several photographs that were sent to Agent Hall by defendant via email correspondence during the course of his undercover investigation. The images in State’s Exhibits 23, 24, 25 and 27 were also recovered from the computer hard drive seized during the search of defendant’s residence.
At trial, defendant claimed these photographs had been deleted from his computer once he realized what they were and further testified that he was unable to explain how the images containing child pornography were sent via email to Agent Hall. Again, the jury was faced with a credibility determination and after viewing the evidence and listening to the testimony presented, found the evidence was sufficient to prove defendant did not accidently download or send the images to Agent Hall but, rather, that defendant intentionally and knowingly distributed and possessed images containing child pornography.
Based on the testimony and evidence adduced at trial, we find that any rational trier of fact could have concluded that the evidence, when viewed in a light most favorable to the prosecution, supports defendant’s conviction for possession and *291 distribution of child pornography beyond a reasonable doubt.
LsWith respect to his defense of entrapment, defendant contends ■ that the advertisement he posted on Craig’s List was not “obscene,” and that it was not until “repeated contact” by Agent Hall that a crime was “set up.” He claims that he was never “involved in child pornography” and would have never had child pornography on his computer if it were not for “Koala” who sent him the images. He further maintains that the State failed to prove his predisposition to commit the charged offenses until after he was contacted by Agent Hall. He alleges that by driving to the meeting location set up by Agent Hall, his intent was to confirm the presence of a pedophile and report his findings to the police. Defendant concludes that by “not investigating all those involved ... or proving they were not acting in concert with police,” he “can only assume entrapment at the hands of overzealous law enforcement.”
On appeal, contentions of entrapment are reviewed according to the constitutional standard for testing the sufficiency of the evidence as set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Petta, 98-745, pp. 7-8 (La.App. 5 Cir. 2/10/99), 729 So.2d 29, 32, writ denied, 99-0692 (La.9/3/99), 747 So.2d 533, cert. denied, 528 U.S. 1125, 120 S.Ct. 956, 145 L.Ed.2d 830 (2000); State v. Bates, 03-352, p. 4 (La.App. 5 Cir. 7/29/03), 853 So.2d 71, 74, writ denied, 03-2565 (La.2/6/04), 865 So.2d 740. The relevant inquiry is “whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could conclude that the defendant did not prove that he was entrapped by a preponderance of the evidence.” State v. St. Amant, 584 So.2d 724, 726 (La.App. 4th Cir.1991).
Considering the evidence presented at trial, specifically the officers’ testimony, and the defendant-led conversations during which he alone requested a meeting with a twelve-year-old girl to have sex with, it would not have been | ^unreasonable for the jury to conclude that defendant was not entrapped, thus, eliminating the need to consider the second prong of the entrapment defense-predisposition.
Moreover, in returning the guilty verdict, the jury obviously rejected the entrapment defense. The question of whether a government agent induced an innocent person into committing a crime is a jury question. State v. Hardy, 98-25, p. 9 (La.App. 5 Cir. 5/13/98), 715 So.2d 466, 471. Furthermore, the trier of fact determines the credibility of witnesses, and within the bounds of rationality, may accept or reject the testimony. State v. Deruise, 98-0541, p. 26 (La.4/3/01), 802 So.2d 1224, 1243, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). It is not the function of the appellate court to assess credibility or reweigh the evidence. Bates, 03-352 at 7, 853 So.2d at 75.
Agent Hall merely provided an opportunity in this case for defendant to commit a crime that he was obviously predisposed to commit. Thus, we determine that a rational trier of fact could have found defendant failed to establish by a preponderance of the evidence that he was induced by a government agent to commit the crimes for which he was convicted.
These counseled and pro se assignments of error merit little consideration!

COUNSELED AND PRO SE ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred in failing to suppress the statement.

*292
DISCUSSION

In his next assignment, defendant does not contest that he was not properly Mirandized, rather defendant argues that Agent Hall “coerced” him into “changing his original statement and confessing to the crime by threatening additional charges for “lying to a federal officer.” Defendant concludes that because the statement |?.nwas not made voluntarily, it should have been suppressed, and the failure to suppress the statement does not constitute harmless error.
The State responds that defendant was ádvised of his Miranda rights and knowingly waived his rights prior to giving his statement. The State further maintains that defendant’s statement was not made under the influence of fear, intimidation, menaces, threats, inducements or promises.
At the hearing on defendant’s motion to suppress the statement, Agent Hall testified, as he did at trial, that after defendant was apprehended, he was taken to the Kenner Police Department where both he and Detective Zuppardo advised defendant of his Miranda rights. Defendant acknowledged his rights verbally and by his signature on the FBI rights form and Ken-ner Police Department rights form. After waiving his rights, defendant answered the questions asked by Agent Hall. Agent Hall testified that defendant was not forced, coerced, or threatened into making a statement, nor promised anything of value in return for making a statement.
On cross-examination, Agent Hall explained that it is his procedure to start his interview by introducing himself and advising the interviewee “what the consequences could be in a court of law if one were to lie during a federal investigation.” Agent Hall explained that such consequences consisted of up to a two-hundred and fifty thousand dollar fine and up to a year in jail. Agent Hall further testified that initially, defendant was not forthcoming during the interview, claiming that he went to the Idaho Avenue address to see if there was actually a twelve-year-old girl there and then, if it was true, planned on contacting law enforcement officials. Based on the content of the email correspondences with defendant, Agent Hall testified that he told defendant that he did not believe he was being |¾;truthful and reiterated the consequences for being untruthful. Defendant then admitted that he went to the address to have sex with a twelve-year-old girl.
At the conclusion of the hearing testimony, defendant argued that his statement should be suppressed because he was under duress by Agent Hall who used threats of possible jail time if he lied during the interview. In response, the State maintained that defendant was properly Miran-dized, waived his rights, and was not under duress when he gave his statement. After listening to the arguments of counsel, the trial court denied defendant’s motion to suppress, finding as follows:
He [Agent Hall] indicated that he and Kenner Police, Det. Cantrell [Zuppardo], interviewed the Defendant, Gary Workman, after advising him of his rights.
He was advised both of the FBI rights and his rights by the Kenner Police Department, using each of their respective forms. Mr. Workman acknowledged both verbally and by signature that he understood those rights.
After being informed, he made statements to Agent Hall and Det. Cantrell [Zuppardo] which implicated himself with regard to these charges. Although the agent advised him of the criminal consequences of lying, the Court believes that that does not rise to the level of duress to force Mr. Workman to tell something that is untrue.
*293 Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. La. R.S. 15:451; State v. Mollette, 08-138, pp. 9-10 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467, writ denied, 09-0155 (La.10/16/09), 19 So.3d 472; State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817.
|22The police are required to explain Miranda’s special procedural safeguards to the suspect before initiating a custodial interrogation that deprives the suspect of his freedom of action. State v. Payne, 01-3196, p. 7 (La.12/4/02), 833 So.2d 927, 934. A statement obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary and, therefore, inadmissible. State v. Gregory, 05-628, pp. 7-8 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 483.
A determination of whether a waiver of constitutional rights was knowing and voluntary is made on a case-by-case basis, and such a determination rests upon the totality of the circumstances. State v. McGee, 04-963, pp. 11-12 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 407, writ denied, 05-0593 (La.5/20/05), 902 So.2d 1050. There is a presumption against waiver which the State must rebut. Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980). The State cannot rely on general disclaimers of inducements or promises. McGee, 04-963 at 11-12, 894 So.2d at 407. Rather, the State must specifically rebut the defendant’s allegations when claims of police misconduct in eliciting a confession are raised. State v. Blank, 04-204, p. 10 (La.4/11/07), 955 So.2d 90, 103, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
The trial court’s admissibility of a statement, and its conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement, are entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Allen, 06-778, p. 12 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 752, writ denied, 08-2432 (La.1/30/99), 999 So.2d 754.
Although defendant in the instant matter does not contest that he was properly Mirandized, it is noted that prior to interviewing defendant about the crimes for which he was arrested, defendant was twice advised of his Miranda | ^rights both orally and in writing by'Detective Zuppar-do and Agent Hall. Defendant indicated that he understood his rights and signed both the FBI’s and the Kenner Police Department’s advice of rights form, waiving his rights.
Further, based on the evidence and testimony from the suppression hearing and the trial, the record is devoid of any indication that defendant was coerced into making his statement under the influence of “threats” made by Agent Hall. As stated by the trial court, “[a]lthough the agent advised him of the criminal consequences of lying, the Court believes that that does not rise to the level of duress to force Mr. Workman to tell something that is untrue.” Additionally, the record further establishes that such an advisal was not perceived as a threat to defendant who continued to be untruthful with Agent Hall until he was presented with concrete evidence in the form of the email correspondences regard *294 ing his wrongdoing. Accordingly, we find the trial court did not err in denying defendant’s motion to suppress statement, upon concluding that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises.
This assignment of error merits little consideration.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO

Mistrial should have been granted due to Prosecutorial Misconduct.

DISCUSSION

In his second pro se assignment, defendant argues that prosecutorial misconduct occurred and a mistrial should have been granted when the prosecutor made “improper comments and stated [an] opinion which greatly prejudiced the jury:” Specifically, defendant maintains that the prosecutor improperly implied that defendant had “concocted” his story while “sitting in jail trying to figure out a way to go home.”
|24At trial, defense counsel moved for a mistrial when the State questioned defendant regarding his repeated use of the word “intent,” and inquired as to whether defendant was using the word because he had been “sitting in jail thinking about this charge, and ... intent is what this whole case is about[.]” Defense counsel argued that the State’s comment regarding defendant “sitting in jail” prejudiced the jury. In response, the State argued that defense counsel had. brought up the fact that defendant was in jail during his direct examination. The trial court agreed, denying defendant’s motion for mistrial.
On appeal defendant argues that a mistrial should have been granted based on a different basis than the one asserted at trial. For the first time on ' appeal defendant alleges that d mistrial should have been granted based on prose-cutorial misconduct concerning statements regarding defendant’s alleged recent fabrication of his defense. The record discloses no contemporaneous objection to this alleged prosecutorial misconduct. The contemporaneous objection rule provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. State v. Carter, 10-973, p. 10 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 6, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469. This rule applies to claims of prosecutorial misconduct. Id. Accordingly, we find that defendant has waived any error based on this claim by his failure to lodge a contemporaneous objection.
This pro se assignment of error merits little consideration.

ASSIGNMENT OF ERROR NUMBER THREE

The trial court imposed an excessive sentence.

DISCUSSION

In his final assignment of error, defendant argues the trial court erred when it imposed consecutive sentences on four of his five counts. He maintains that | accounts one through four arose out of the same facts and circumstances; accordingly, defendant' asserts that the consecutive sentences imposed are excessive. Defendant further alleges that the trial judge failed to articulate reasons for imposing the consecutive sentences, which he contends is a deviation from the law’s “preference for concurrent sentences” as codified under La.C.Cr.P. art. 883.
In response, the State asserts that defendant failed to file a motion for reconsideration of sentence, thus, precluding defendant from challenging the consecutive nature of his sentences on appeal. Ac *295 cordingly, because the excessiveness of consecutive sentences is not included in a bare constitutional review, the State argues that defendant’s claim is not properly before this Court.
Here, the record reveals that defense counsel orally objected to defendant’s sentences at the time of sentencing. However, he did not make an oral motion for reconsideration of sentence or file a written motion for reconsideration of sentence on the grounds now raised on appeal. La.C.Cr.P. art. 881.1 B states that a motion to reconsider sentence “shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.” Failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. La. C.Cr.P. art. 881.1 E; State v. Zaldivas, 02-690, p. 9 (La.App. 5 Cir. 12/30/02), 836 So.2d 577, 583, writ denied, 03-0705 (La.10/17/03), 855 So.2d 757.
Defendant does not contend that any sentence on its own is excessive. Rather, he urges that the consecutive nature of his sentences make them excessive. This Court has recognized that the exces-siveness of a consecutive sentence is not included in a bare constitutional review. State v. Greene, 06-667, p. 19 (La.App. 5 Cir. 01/30/07), 951 So.2d 1226, 1238, writ denied, 07-0546 (La.10/26/07), 966 So.2d 571 (citing State v. Christoff, 00-1823 (La.App. 5 Cir. 5/30/01), 788 So.2d 660, 666). Accordingly, we find defendant is arguably precluded from challenging the excessiveness of his consecutive sentences on appeal. See State v. Smith, 04-199 (La.App. 5 Cir. 6/29/04), 877 So.2d 1123, 1135, writ denied, 04-2081 (La.1/7/05), 891 So.2d 669; State v. Watson, 02-1154 (La.App. 5 Cir. 3/25/03), 844 So.2d 198, 212, writ denied, 03-1276 (La.5/14/04), 872 So.2d 506.
Nevertheless, upon review we find that the sentences imposed on defendant are not constitutionally excessive. Defendant’s sentencing exposure for attempted aggravated rape was from 10 to 50 years, and he received a sentence that was only five years above the minimum. Regarding his sentences on the four counts of possession of pornography involving juveniles, defendant received one-half of the maximum sentence on each count.
With respect to the consecutive nature of defendant’s sentences, we note that it is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. Coates, 27,287 (La.App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365; State v. George, 26,867 (La.App.2d Cir.04/05/95), 652 So.2d 1382, writ denied, 95-1151 (La.09/29/95), 660 So.2d 855. Concurrent sentences arising out of a single cause of conduct are not mandatory and consecutive sentences under those circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Furthermore, the trial court gave reasons for the sentences that included: due the nature of the offenses there was a high probability that defendant would re-offend, therefore requiring corrective treatment, and; some of the offenses involved minors under the age of 13. The record also contains testimony concerning defendant’s prior unsuccessful attempt to commit the crime of aggravated rape on a previous occasion with |27another child. Based on the foregoing we find that the sentences imposed are not unconstitutionally excessive under a bare constitutional review.
*296 This assignment of error merits little consideration.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

“The trial court erred in instructions concerning Attempt Statute (14:27).” DISCUSSION
In the instant case, the final version of the charge presented to the jury[8] tracked the language of La. R.S. 14:27(A), which states, in relevant part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Defendant appears to contend that the trial court erred in allowing the State to omit a portion of the attempt statute regarding the use of a “dangerous weapon” when questioning Agent Hall, and in crafting the final jury instructions. However, the bill of information in this case never alleged the use of a weapon as an element of the charged offense.
A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337, 1348 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). Here, the complained of charge was not a misstatement of law. Rather, the trial court excised the portions of the attempt statute that pertained to a “dangerous | ^weapon” because they were not relevant to the case. La.C.Cr.P. art. 802 provides that the court shall charge the jury as to the law applicable to the case. Clearly the law pertaining to dangerous weapons under La. R.S. 14:27(B)(1), did not apply, and therefore, the trial court instructed the jury as to the correct charge and elements necessary to convict defendant of the attempted aggravated rape offense.
Accordingly, this assignment is without merit.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following:
The State of Louisiana Uniform Commitment Order reflects the date of . adjudication as March 10, 2014; however, the record reflects that the date of adjudication was actually February 27, 2014. Also, the uniform commitment order does not set forth the offense date for each of defendant’s convictions. Specifically, the uniform commitment order reports the offense date as April 9, 2012—the date on which counts one and five were committed and fails to reflect that counts two, three and four were committed on April 5, 2012.
Accordingly, we remand this matter and order that the uniform commitment order *297 be corrected to reflect the adjudication date and the additional dates of the offenses. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See State v. Lyons, 13-564, p. 9 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170, (citing State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142):

^CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed. We further remand this matter with instructions to correct an error patent on the face of the record.

AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At this point, an administrative subpoena was obtained to secure defendant's IP address so that his physical location could be identified. The administrative subpoena was returned, identifying defendant and his location where FBI agents were sent to conduct surveillance.

. A search warrant was prepared based on these images. Additionally, the image of the nude female juvenile, facing away from the camera, and two of the three PDF images were later recovered from defendant's computer.

. Endavin responded to a different posting by defendant under the title "[s]omething taboo.”

. When the issues on appeal relate to both the ' sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.

. Nevertheless, the remaining statutory elements of the convicted crimes were considered and appear to have been sufficiently proven by the State.

. "Sexual performance” means any performance or part thereof that includes actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals or anus.

. In addition, while the jury charge conference is not part of the record herein, it is noted that, when asked by the court, defense counsel stated that he did not have any objection to the criminal jury charges in their final form. La.C.Cr.P. art. 801(C) states that a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection is made before the jury retires or within such time as the court may reasonably cure the alleged error. Thus, a defendant must make a timely objection under La.C.Cr.P. art. 801 in order to preserve a jury charge issue for review. Here, defendant did not make a timely objection under La.C.Cr.P. art. 801. Nevertheless, we will consider the merits of defendant’s assignment.